TURNER CARTAGE & STORAGE COMPANY *v.*
JEFFERSON INSURANCE COMPANY.

1. CARRIERS—MOTOR CARRIER ACT—LEGISLATIVE PURPOSE.
   The legislative purpose of the motor carrier act is, in part, to
   protect and conserve the highways and protect the safety and
   welfare of the traveling and shipping public in their use of
   them (CLS 1961, § 475.2).

2. SAME—CONSTRUCTION OF CARGO INSURANCE POLICY.
   Any interpretation of a carrier's cargo insurance policy must be
   made with the interest of the shipping public given utmost
   consideration (CLS 1961, § 475.2).

3. INSURANCE—LIABILITY OF CARRIER'S CARGO INSURER—BREACH OF
   PUBLIC SERVICE COMMISSION RULES.
   Insurance company was properly held liable for damages to ma-
   chine being hauled by its insured under policy covering all
   property accepted for transportation by insured unless fraud
   was proven, and coverage was not vitiated by insured's breach-
   ing public service commission rules by making an oral agree-
   ment temporarily augmenting their equipment when rules re-
   quire augmentation of equipment by written lease (CL 1948,
   § 476.14; CLS 1961, §§ 479.6, 479.6a, 479.10).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 13 Am Jur 2d, Carriers § 20 *et seq.*; 29A Am Jur, Insurance
   § 1356 *et seq.*
[2] 29 Am Jur, Insurance § 261.

**4. SAME—DELAY IN GIVING NOTICE—PREJUDICE BY DELAY.**

Finding of trial court that delay of 34 days in giving formal notice to a carrier's cargo insurance company of accident damaging cargo of heavy machinery and also injuring highway overpass was not unreasonable delay in notification is not disturbed, where the insurance company was not prejudiced by the delay, and it had actual notice, and its agents were investigating the accident before formal notice was given.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted Division 1 December 6, 1967, at Detroit. (Docket No. 2,592.) Decided March 29, 1968. Leave to appeal denied June 19, 1968. See 381 Mich 756.

Complaint by Turner Cartage & Storage Company, a Michigan corporation, against Jefferson Insurance Company, a New York corporation, Ace Doran Hauling & Rigging Company, an Ohio corporation, Everett Peak, and Liberty Mutual Insurance Company, a Massachusetts corporation, to determine liabilities of the parties for payment of damages to machinery in accident. People of the State of Michigan intervened as plaintiff to recover for damages to highway bridge. Judgment against Jefferson Insurance Company for damage to machine. Judgment against Turner Cartage & Storage Company for damage to overpass. Jefferson Insurance Company appeals. Turner Cartage & Storage Company cross-appeals. Judgment affirmed.

*Earl D. Ross* (*Louis Rosenzweig,* of counsel), for plaintiff.

*Eugene C. Ewald* (*Matheson, Dixon & Bieneman* and *Nathan, Mannheimer, Asche, Winer & Friedman,* of counsel), for Jefferson Insurance Company.

*Alexander, Buchanan & Conklin* (*Perry J. Seavitt,* of counsel), for Ace Doran Hauling & Rigging Company and Liberty Mutual Insurance Company.

McGregor, J. At 7:15 p.m. on Friday, January 5, 1962, Everett Peak was driving his heavily loaded truck on the Ford expressway in Detroit. Resting on the platform of his low-bed trailer was a 14-ton machine destined for an automobile plant in Flint. Unfortunately, the truck was more than just heavily loaded, the total height of the truck and the machine exceeded the maximum height limit for over-the-road trucks as established by the Michigan public service commission. The reason for the maximum height limitation was amply illustrated at the point where Michigan avenue intersects and overpasses the Ford expressway, as Mr. Peak's truck failed to clear the overhead bridge structure. This collision caused the machine to break apart, with a portion of it falling off the truck onto the pavement, and also damaged the highway overpass. Repairs to the machine cost $23,891.14 and damage to the highway overpass structure was stipulated as $3,250. The legal chain of events which started with the collision and has led to this appeal includes a refusal of an insurance carrier to pay for the cargo damage, an action for declaratory judgment in Wayne county circuit court, an intervention by the State to settle liability for the damage to the overpass, and a declaratory judgment by the circuit court sitting without a jury. While this Court is concerned only with the legalities flowing from that fateful collision, we can muse at the monumental traffic jam which must have been caused by the Ford expressway being blocked for hours, and the uncounted cold dinners consumed by those individuals traveling behind Mr. Peak in the last of the rush hour traffic that Friday evening.

To untangle the web of parties, actions, and cross-actions in this case it is necessary to look back a few weeks before this collision. In late 1961, plaintiff-

appellee-cross-appellant Turner Cartage & Storage Company, a certified carrier authorized by the Michigan public service commission to haul heavy machinery and equipment intrastate in Michigan, entered into a contract to transport numerous large industrial machines from the Detroit area to Flint. The record indicates that these machines were designed to form an integrated operation at a Flint automobile plant; therefore, the equipment set-up pace in Flint determined the truck hauling schedule from the Detroit area. A few days before the fateful trip of Mr. Peak, Turner Cartage realized that it would not have available a sufficient number of truck tractors and the relatively scarce low-bed type trailers to meet the delivery requirements of January 5, 1962. A call was placed by Turner Cartage to defendant-appellee-cross-appellee Ace Doran Hauling & Rigging Company, an interstate hauler not certified as an intrastate hauler by the public service commission, but which was known to have the required low-bed trailers. An oral agreement was reached between Turner Cartage and Ace Doran to use a low-bed trailer which Mr. Peak had leased to Ace Doran, with Mr. Peak to drive the truck. The Michigan motor carrier act, PA 1933, No 254, ch 2, § 14 (CL 1948, § 476.14 [Stat Ann § 22.547]), and ch 5, §§ 6, 6a, as amended by PA 1954, No 28, and § 10, as amended by PA 1959, No 232 (CLS 1961, §§ 479.6, 479.6a, 479.10 [Stat Ann 1961 Cum Supp §§ 22.571, 22.571(1), 22.575]), empowered the public service commission to promulgate rules whereby a motor carrier could augment its equipment by written lease arrangements. It is clear in this instance that the rules for augmenting equipment were not followed by Turner Cartage. The trip in which the collision occurred was the second one on January 5th for Everett Peak. On both trips all references to the

motor carrier on all the shipping documents were to Turner Cartage.

Turner Cartage made claim for the damage to the machine from the carrier of its cargo insurance, Jefferson Insurance Company, defendant-appellant in this suit.    Jefferson Insurance denied liability, mainly on the strength of the uniform indorsement of the public service commission attached to the policy which set out the policy coverage as for property accepted for transportation in accordance with the Michigan statutes and rules for intrastate hauling.    Jefferson Insurance argues that since the augmentation of equipment rules were not complied with, it is not liable under the policy which limited coverage to the equipment properly under the control of Turner Cartage.    Because the cargo insurance premium was based on the payroll of Turner Cartage, Jefferson Insurance further claims that premiums were not paid for cargo coverage for the trips of Everett Peak, who was not on the payroll of Turner Cartage.    Finally, Jefferson Insurance claims it is not liable for damage to the machine because it did not receive formal notice of the accident until 34 days after the accident and, therefore, there was an unreasonable delay in giving notice.

After the denial of liability by Jefferson Insurance, Turner Cartage requested payment for the machine repairs from Everett Peak, Ace Doran, and Liberty Mutual Insurance Company, the cargo insurance carriers for Ace Doran.    All parties refused to assume liability for the repairs to the machine. Turner Cartage then commenced suit against all of the aforenamed parties.    The State of Michigan intervened in the suit with a claim for damage to the overpass.    Judgment was rendered against Jefferson Insurance Company for the damage to the machine and it here appeals.    Judgment was rendered

against Turner Cartage for damage to the overpass, and it has filed a cross-appeal which admits such liability under the holding of liability of Jefferson Insurance for the cargo damage, but which argues that in the event the judgment as to cargo damage is reversed, then Turner Cartage should not be liable for the damage to the overpass. The State, having established liability in some party, did not appeal. The other parties, Ace Doran, Everett Peak, and Liberty Insurance, having avoided liability completely, argue for affirmance.

In order to resolve the question of the cargo insurance coverage, we need only look to the purpose of the motor carrier act and to the wording of the uniform indorsement of the public service commission attached to the policy of cargo insurance. In CLS 1961, § 475.2 (Stat Ann 1968 Cum Supp § 22-.532), the purpose of the motor carrier act is stated, in part, to:

"protect and conserve the highways and protect the safety and welfare of the travelling and shipping public in their use thereof."

Public policy, as set forth by the legislature, therefore, dictates that any interpretation of a cargo insurance policy must be made with the interest of the shipping public given utmost consideration.

Subsection (d) of the uniform cargo insurance indorsement of the public service commission, which was attached to this policy, states that the policy shall cover:

"All property accepted for transportation by the policy holder."

Subsection (a) of the indorsement states that the insurance coverage shall not be vitiated unless "a fraud is proven." We believe that under the facts of this case the statutorily stated public policy of

protecting the shipping public can only be given effect by a holding that if property was accepted for transportation by Turner Cartage, and there was no fraud proven, then the cargo insurance coverage was not vitiated by any other breach of the rules of the public service commission. Since there has been no allegation or proof of fraud, and since we see no reason to upset the trial judge's factual finding that the machine in question was accepted for transportation by Turner Cartage, we conclude that Jefferson Insurance was properly adjudged liable in this case for the damage to the machine.

Remaining is the question of whether the policy coverage was defeated by not giving notice within a "reasonable time" as required by the policy. An unreasonable delay in notification would be such delay that the insurance company would be prejudiced in some way because of the delay. Here, we find no reason to overrule the trial judge's factual determination that no prejudice was incurred by Jefferson Insurance because of any interim between the collision and a formal notice to Jefferson Insurance. In this light, we also note that it appears from the record that Jefferson Insurance had actual notice of the collision and that its agents were investigating the collision before it received formal notice.

The judgment of the trial court as to the liability for damages to the cargo is affirmed. Because of the holding on cargo damage liability, it is unnecessary for this Court to consider the cross-appeal. Costs to Turner Cartage & Storage Company against Jefferson Insurance Company.

LESINSKI, C. J., and FITZGERALD, J., concurred.